1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

GREGORY AHLQUIST; EDWARD
GOEHRING; MARTY MARTIN;

8

CHRIS WALSH; DAWN WELTER;
NICHOLE MILLER; SHERRY

9

MOORE; JAMES FETHEROLF;
CHERYL FETHEROLF,

10

11

                    Plaintiffs,

    v.

12

CITY OF KENNEWICK, a Washington
municipal corporation; BENTON

13

COUNTY, a Washington municipal
corporation; MARCO

14

MONTEBLANCO; DANIEL LONG;
KEN LATTIN; JEFFREY SAGEN;

15

JACK SIMINGTON; JOSHUA KUHN;
WAYNE MEYER; DEPUTY CARLOS

16

TREVINO; JEREMY CARRIGAN;
ABEL SUAREZ; JOHN DOE

17

FITZPATRICK; DAN KORTEN, and
JOHN DOES 1-20,

18

                  Defendants.

19

20

NO:  4:14-CV-5104-RMP

ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 1

1    BEFORE THE COURT are Defendants' Motion for Summary Judgment,

2  **ECF No. 33**, and Plaintiffs' Motion for Summary Judgment, **ECF No. 38**. The

3  Court heard oral argument on both motions on March 14, 2016. ECF No. 64. The

4  Court has reviewed the motions, the response memoranda (ECF Nos. 45 and 54),

5  the reply memoranda (ECF Nos. 53 and 59), has heard argument from counsel, and

6  is fully informed.

7                                  **BACKGROUND**

8    On August 29, 2012, Plaintiffs Gregory Ahlquist, Edward Goehring, Marty

9  Martin, Chris Walsh, and James Fetherolf were riding motorcycles in a group. ECF

10  No. 34 at 3. Plaintiffs were accompanied by a sixth motorcyclist, Jeremiah Jones,

11  who is not a party in this matter. *Id.* Additionally, Plaintiff Sherry Moore was a

12  passenger on Mr. Goehring's motorcycle, Plaintiff Dawn Welter was a passenger

13  on Mr. Walsh's motorcycle, Plaintiff Nicole Miller was a passenger on

14  Mr. Martin's motorcycle, and Plaintiff Cheryl Fetherolf was a passenger on

15  Mr. Fetherolf's motorcycle. *Id.* at 4. Plaintiffs Ahlquist, Goehring, Martin, Walsh,

16  and J. Fetherolf, along with non-party Jones, were members of the Bandidos

17  Motorcycle Club. *Id.* at 3. Plaintiffs Moore, Welter, Miller, and C. Fetherolf self-

18  identify as Proud Bandidos Old Ladies. ECF No. 41 at 4. Plaintiffs were traveling

19  to a national club meeting in Colorado. *Id.* Plaintiffs were wearing clothing

20  identifying them as members of the Bandidos Motorcycle Club. ECF No. 34 at 5.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 2

Plaintiffs exited the interstate and spent an hour at a gas station. ECF No. 41 at 5. Kennewick Police Department Detective Dan Long was notified by Sergeant Jack Simington that the group of Bandidos Motorcycle Club members were traveling in the City of Kennewick, and were parked at a gas station at the intersection of Clearwater and Leslie. ECF No. 34 at 2. In Detective Long's role as a detective tasked with investigating gang cases, Detective Long drove to the gas station to conduct surveillance on Plaintiffs.[1] *Id.* at 2–3. While conducting surveillance, Detective Long photographed Plaintiffs. *Id.* at 3.

While Detective Long was surveilling Plaintiffs, Plaintiffs rode out of the parking lot onto Leslie Street. *Id.* There is a sidewalk that runs along Leslie Street.[2]

---

[1] Plaintiffs dispute Defendants' designation of the Bandidos Motorcycle Club as a "gang" and the designation of Bandidos Motorcycle Club members as "gang members." ECF No. 48 at 2. However, as a classification of the Bandidos Motorcycle Club is not relevant to the adjudication of the instant matter, this dispute does not create a genuine issue of material fact as to any of Plaintiffs' asserted causes of action.

[2] Plaintiffs assert that a sidewalk runs along a portion of Leslie Street and ends almost immediately after the gas station driveway. ECF No. 48 at 3. However, as the sidewalk relevant to the instant matter is the sidewalk contacting the gas station

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 3

*Id.* at 4. When pulling out of the gas station parking lot, Detective Long observed the six motorcyclists fail to come to a complete stop prior to driving over the sidewalk.[3] *Id.* at 5. Detective Long did not immediately initiate a traffic stop, instead following Plaintiffs onto the interstate. *Id.* Detective Long intended to stop Plaintiffs for having failed to stop at the sidewalk before exiting onto a public street.[4] *Id.*

---

driveway, this dispute does not create a genuine issue of material fact as to any of Plaintiffs' asserted causes of action.

[3] Plaintiffs dispute Detective Long's observation, claiming that at least some Plaintiffs came to a complete stop prior to riding over the sidewalk. ECF No. 41 at 10–11. The Court will address this dispute when discussing Plaintiffs' 42 U.S.C. § 1983 cause of action asserting that Defendants lacked the necessary reasonable suspicion to initiate an investigatory stop.

[4] Plaintiffs dispute that Detective Long actually intended to stop Plaintiffs for violating the traffic code. ECF Nos. 41 at 11, 48 at 4. The Court will address this dispute when discussing Plaintiffs' 42 U.S.C. § 1983 causes of action.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 4

Defendants initiated the traffic stop after Mile Post 117, which is eight miles from the gas station where the alleged infraction occurred.[5] *Id.* at 6. Plaintiffs pulled over in two groups: Plaintiffs Walsh and Ahlquist in the back and Plaintiffs Goehring, Martin, and Fetherolf, as well as non-party Jones, a distance further along the interstate. ECF No. 39-1 at 5. Defendant Detective Marco Monteblanco issued handwritten traffic infractions to Plaintiffs Walsh and Ahlquist while Defendant Officer Jeffrey Sagen issued traffic infractions to the four remaining motorcyclists using the SECTOR electronic system. ECF No. 39-8 at 9. The parties dispute the exact duration of the traffic stop as well as the conduct of the police officers. *Compare* ECF No. 34 *with* ECF No. 41. Plaintiffs' infractions were subsequently dismissed by the Benton County District Court. ECF No. 41 at 25.

## DISCUSSION

Defendants move for summary judgment on Plaintiffs' 42 U.S.C. § 1983 cause of action. ECF No. 33. Plaintiffs assert that Defendants acted under color of state law to deprive Plaintiffs of the following constitutionally protected rights: the

---

[5] Plaintiffs assert that Defendants acted with excessive force when pulling over Plaintiffs. ECF No. 41 at 14. However, as Defendants' action in stopping Plaintiffs is unrelated to Plaintiffs' asserted causes of action, this dispute does not create a genuine issue of material fact as to any of Plaintiffs' asserted causes of action.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 5

1  right not to be deprived of liberty without due process of law; the right to be free

2  from invasion or interference with property; the right to equal protection of the

3  law; the right to be free from unreasonable search and seizure; the right to be free

4  from discriminatory law enforcement; the right to be free from excessive force; the

5  right to freedom of speech and association; and the right to be free from false arrest

6  and malicious prosecution. ECF No. 4 at 7.

7      Plaintiffs move for summary judgment on the following issues: (1) whether

8  the duration of the traffic stop was unreasonable as a matter of law; and

9  (2) whether Defendant officers violated the Washington State Motorcycle Profiling

10  Law, RCW 43.101.419. ECF No. 38.

11  **I.    Summary Judgment Standard**

12      Summary judgment is appropriate when the moving party establishes that

13  there are no genuine issues of material fact and that the movant is entitled to

14  judgment as a matter of law. Fed. R. Civ. P. 56(a). If the moving party

15  demonstrates the absence of a genuine issue of material fact, the burden shifts to

16  the non-moving party to set out specific facts showing that a genuine issue of

17  material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A

18  genuine issue of material fact requires "sufficient evidence supporting the claimed

19  factual dispute . . . to require a jury or judge to resolve the parties' differing

20  versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 6

809 F.2d 626, 630 (9th Cir. 1987). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(c)(2). Evidence that may be relied upon at the summary judgment stage includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). The Court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## II.    42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants argue that

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 7

Plaintiffs fail to demonstrate that Defendants violated a right secured by the Constitution and, alternatively, that Defendants are entitled to qualified immunity. ECF No. 33.

### A. Reasonable Suspicion to Initiate Traffic Stop

Under the Fourth Amendment, "government officials may conduct an investigatory stop of a vehicle only if they possess 'reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"[6] *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (citing *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000)). The

---

[6] The parties alternatively discuss both "reasonable suspicion" and "probable cause" as the applicable Fourth Amendment standard. *Compare* ECF No. 45 at 7 *with* ECF No. 53 at 11. This confusion likely arises from *United States v. Whren*, 517 U.S. 806 (1996), in which the Supreme Court wrote that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 811. However, as the Ninth Circuit has held that *Whren* did not intend to change the settled rule that "the Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops," *United States v. Lopez-Soto*, 205 F.3d 1101, 1104–05 (9th Cir. 2000), this Court will apply the "reasonable suspicion" standard to Plaintiffs' allegations.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 8

'reasonable suspicion analysis takes into account the totality of the circumstances." *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006). "A traffic violation alone is sufficient to establish reasonable suspicion." *Id.*

Defendants argue that Detective Long had reasonable suspicion to initiate a traffic stop based on Plaintiffs' failure to stop prior to exiting the gas station parking lot. ECF No. 33 at 9. Under RCW 46.61.365,

> [t]he driver of a vehicle within a business or residence district emerging from an alley, driveway or building shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right-of-way to any pedestrian as may be necessary to avoid collision, and upon entering the roadway shall yield the right-of-way to all vehicles approaching on said roadway.

RCW 46.61.365.

Plaintiffs argue that Detective Long did not have the requisite reasonable suspicion to initiate an investigatory traffic stop. ECF No. 45 at 7–9. Specifically, Plaintiffs assert that: 1) there is a question of fact as to whether all six motorcyclists failed to stop prior to crossing the sidewalk; 2) Detective Long was not aware of RCW 46.61.365 at the time of the stop, thereby committing a mistake of law; and 3) the asserted traffic infraction was a pretext to conduct an unrelated police investigation. *Id.*

The Court finds that Detective Long had the requisite reasonable suspicion to conduct an investigatory stop on Plaintiffs. Detective Long testified that "there's

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 9

1    a sidewalk that runs along Leslie there, and this group of six left as a pack. And

2    they . . . all six of them blew right past that sidewalk without stopping." ECF

3    No. 35-2 at 8; *see also id.* at 12 (recalling that "they crossed the threshold of the

4    sidewalk without coming to a complete stop and without providing proper pause

5    to, you know, do a proper check for side traffic and for proper yielding and so

6    forth"). As, under RCW 46.61.365, it is a traffic infraction to fail to stop prior to

7    driving onto a sidewalk when emerging from an alley, driveway, or building,

8    Detective Long had reasonable suspicion that Plaintiffs violated RCW 46.61.365

9    when exiting the gas station.

10         Plaintiffs argue that there is "a question of fact whether officers had

11   probable cause to force all of the riders . . . off the road." ECF No. 45 at 7–8.

12   Plaintiffs' argument is based on testimony that some of the motorcyclists stopped

13   prior to driving onto the sidewalk. *See* ECF No. 39-4 at 4 (Plaintiff Goehring's

14   testimony that both Plaintiff Martin and himself stopped at the sidewalk); ECF

15   No. 39-6 at 4 (Plaintiff Moore's testimony that Plaintiff Goehring came to a

16   complete stop). However, "a mere mistake of fact will not render a stop illegal, if

17   the objective facts known to the officer gave rise to a reasonable suspicion that

18   criminal activity was afoot." *United States v. Mariscal*, 285 F.3d 1127, 1131 (9th

19   Cir. 2002). As noted above, Detective Long testified that all six motorcyclists

20   failed to stop prior to driving onto the sidewalk. ECF No. 35-2 at 8. As such, it was

1   objectively reasonable for Detective Long to conclude, based on his viewpoint, that

2   all six motorcyclists had committed a traffic infraction, even assuming that some of

3   the motorcyclists did in fact completely stop. The Court finds that the alleged

4   mistake of fact, even if assumed to be true, does not deprive Detective Long of

5   reasonable suspicion to initiate the investigatory stop.

6        Further, Plaintiffs assert that Detective Long "conceded he wasn't familiar

7   with the exact RCW section at the time and had never stopped someone for

8   violating RCW 46.61.365 during his eleven years as a police officer." ECF No. 45

9   at 8. Plaintiffs argue that "a mistake of law will invalidate the initial stop." *Id.*

10       In the Ninth Circuit, "a belief based on a mistaken understanding of the law

11  cannot constitute the reasonable suspicion required for a constitutional traffic

12  stop." *Twilley*, 222 F.3d at 1096. However, "[t]hat does not mean the officer must

13  have a precise appreciation of the niceties of the law. If the facts are sufficient to

14  lead an officer to reasonably believe that there was a violation, that will suffice,

15  even if the officer is not certain about exactly what it takes to constitute a

16  violation." *Mariscal*, 285 F.3d at 1130; *see also United States v. Wallace*, 213 F.3d

17  1216, 1220 (9th Cir. 2000) ("Officer Leiber's observations correctly caused him to

18  believe that Wallace's window tinting was illegal; he was just wrong about exactly

19  why.").

20

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 11

Detective Long, while unable to "recite the actual RCW number," was aware that RCW 46.61.365 "existed" at the time of the stop. ECF No. 35-2 at 19. As such, Detective Long did not mistakenly interpret the law; Detective Long was aware that Plaintiffs had committed a traffic infraction, and was simply unsure of the exact provision.

Further, the fact that Plaintiffs were cited for violating two different provisions, RCW 46.61.200 and RCW 46.61.205, does not alter the Court's conclusion. Whatever the citation, Detective Long had the requisite reasonable suspicion that Plaintiffs violated RCW 46.61.365 at the time of the investigatory stop. The relevant inquiry is the officer's mindset when initiating the investigatory stop, not the citation ultimately imposed.

Any allegation that the traffic infraction was merely a pretext to investigate Plaintiffs also fails. As noted by the Ninth Circuit, the Supreme Court has held that "a traffic violation was sufficient to justify an investigatory stop, regardless of whether (i) the violation was merely pretextual, (ii) the stop departed from the regular practice of a particular precinct, or (iii) the violation was common or insignificant." *Choudhry*, 461 F.3d at 1102 (citing *Wren*, 517 U.S. at 811–19). An argument, in the Fourth Amendment context, that Detective Long used the observed traffic infraction as a pretext to conduct an unrelated investigation therefore is not cognizable. Although other jurisdictions may consider Plaintiffs'

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 12

argument,[7] an allegation that a particular investigatory stop was pretextual does not state a violation of the Fourth Amendment.

The Court concludes that Detective Long had the requisite reasonable suspicion to initiate the investigatory traffic stop. As such, Plaintiffs have not demonstrated a genuine issue of material fact concerning their alleged Fourth Amendment violation arising from the investigatory stop initiation, and Plaintiffs' § 1983 cause of action arising from an alleged investigatory stop violation is **dismissed with prejudice**.

**B. Duration of Investigatory Stop**

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop." *Rodriguez v. United States*, __U.S.__, 135 S. Ct. 1609, 1614 (2015). The Fourth Amendment "tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Id.* The seizure "remains lawful only 'so

---

[7] Under article I, section 7 of the Washington State Constitution, "citizens of Washington have held, and are entitled to hold, a constitutional protected interest against warrantless traffics stops or seizures on a mere pretext to dispense with the warrant." *State v. Ladson*, 138 Wn.2d 343, 358 (1999). However, as noted above, a similar claim is not cognizable under the Fourth Amendment.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 13

1    long as [unrelated] inquiries do not measurably extend the duration of the stop.'"

2    *Id.* at 1615 (quoting *Muehler v. Mena*, 544 U.S. 93, 1001 (2005)). "Authority for

3    the seizure thus ends when tasks tied to the traffic infraction are—or reasonably

4    should have been—completed." *Id.* at 1614.

5           During a traffic stop, an officer "may only ask questions that are reasonably

6    related in scope to the justification for his initiation of contact and may expand the

7    scope of questioning beyond the initial purpose of the stop only if he articulates

8    suspicious factors that are particularized and objective." *United States v. Mendez*,

9    476 F.3d 1077, 1080 (9th Cir. 2007) (quoting *United States v. Murillo*, 255 F.3d

10   1169, 1174 (9th Cir. 2001) (internal quotation marks omitted)). However, "'mere

11   police questioning does not constitute a seizure' unless it prolongs the detention of

12   the individual." *Id.* (quoting *Muehler*, 544 U.S. at 100–01).

13          Defendants argue that "this Court can and should rule that the duration of the

14   stop was reasonable as a matter of law." ECF No. 33 at 13. Defendants assert that

15   the number of motorcyclists and openly displayed membership in the Bandidos

16   Motorcycle Club make the thirty-five to thirty-eight minute stop reasonable. *Id.*

17   Further, Defendants contend that Plaintiffs have not identified any actions taken by

18   Defendants that unnecessarily delayed or prolonged the stop. *Id.* at 13–14.

19          Plaintiffs, in their cross motion for summary judgment, argue that the Court

20   should find that, as a matter of law, Defendants detained Plaintiffs longer than was

1  reasonably necessary. ECF No. 38 at 11. Plaintiffs assert that additional

2  justification is required for an investigatory traffic stop that lasts over twenty

3  minutes. *Id.* at 12. Further, Plaintiffs dispute the duration of the traffic stop and

4  contend that Plaintiffs were detained for reasons unrelated to issuing traffic

5  infractions. *Id.* at 14.

6        The parties dispute the exact duration of the investigatory stop itself.

7  Plaintiffs' expert witness, Steve Harbinson, testified that "looking at the CAD

8  history, the traffic stop lasted as long as about 52 minutes." ECF No. 39-12 at 10.

9  Further, Plaintiffs variably recollect that the traffic stop lasted between forty and

10  sixty minutes. *See* ECF No. 39-1 at 5 (Plaintiff Walsh's testimony that the traffic

11  stop lasted "[a]n hour or more."); ECF No. 39-2 at 6 (Plaintiff Welter's testimony

12  that the traffic stop lasted for "45 minutes."); ECF No. 39-7 at 7 (Plaintiff Martin's

13  testimony that the traffic stop lasted "50, 55. Almost an hour."). Defendants,

14  relying on the same CAD report, assert that "the stop lasted between 35-38

15  minutes." ECF No. 33 at 13. Finally, Officer Monteblanco testified that Plaintiffs

16  left the scene a few minutes after the officers logged a license plate in the CAD

17  system at 1526, indicating a 39 minutes traffic stop. ECF No. 63-1 at 4.

18        The Court finds that genuine issues of material fact preclude summary

19  judgment, for either Plaintiffs or Defendants, on Plaintiffs' alleged Fourth

20  Amendment violation arising from the duration of the investigatory stop. There is a

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 15

1   genuine issue of material fact as to how long the traffic stop should have

2   reasonably taken. As noted above, "[a]uthority for the seizure thus ends when tasks

3   tied to the traffic infraction are—or reasonably should have been—completed."

4   *Rodriguez*, 135 S. Ct. at 1614. Mr. Harbinson opines that "the stop should have

5   taken less than 20 minutes." ECF No. 40 at 11. As noted by Mr. Harbinson,

6          Only six infractions were issued. There were twelve officers at
7   the scene. 2 or 3 officers issued citations. Four of the citations were
    written with the electronic Sector System that reads bar codes on drivers
    licenses and electronically generated infraction notices. The four sector
8   tickets were issued by Officer Jeff Sagen. These tickets were started at
    14:47, 15:01, 15:07, and 15:09 hours. Based on the CAD report, the call
9   ended at 15:40 hours.
           In addition, Detectives Long and Monteblanco issued two hand
10  written infractions. These infractions usually take about 2 to 3 minutes
    to fill out. Looking at the infractions, it appears they were filled out by
11  two different people due to the different handwriting. These infractions
    could be filled out at the same time Officer Sagen is issuing the Sector
12  infractions.

13  *Id.* Mr. Harbinson concluded that "[a]nything beyond 20 minutes was excessive

14  and the additional time plaintiffs were detained was devoted by officers to

15  investigation unrelated to the traffic stop." *Id.* Detective Long, on the other hand,

16  testified that "pretty much all of that time" was spend writing infractions. ECF

17  No. 39-8 at 15.

18         Even assuming the entire duration of the traffic stop was spent issuing

19  infractions, Plaintiffs have nevertheless demonstrated a genuine issue of material

20  fact concerning how long it should *reasonably* take for officers to issue six

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 16

1    infractions to a group similar to Plaintiffs. The parties' dispute concerning the

2    length of the traffic stop does not alter the Court's analysis as twenty minutes, the

3    length of time Mr. Harbison testified would be reasonable, is less than the

4    calculated time submitted by both parties. Mr. Harbison's opinion, unchallenged as

5    that of an expert witness, is sufficient to demonstrate a genuine issue of material

6    fact at the summary judgment stage. *See Price v. Sery*, 513 F.3d 962, 972 (9th Cir.

7    2008) (finding that lower court improperly granted summary judgment when

8    discounting contrary expert opinion).

9        Finally, a genuine issue of material fact exists concerning Defendants'

10   activities during the traffic stop, and whether those activities measurably extended

11   the duration of the stop. Plaintiffs assert that Defendants asked various questions

12   about the group's destination and the Bandidos Motorcycle Club structure, as well

13   as photographed and video-recorded the group. *See, e.g.*, ECF No. 39-2 at 7

14   (Plaintiff Welter's testimony that "the plain-clothes detective was asking why there

15   were two sergeant-of-arms and just a lot of where we were going."); ECF No. 39-4

16   at 7 (Plaintiff Goehring's testimony that a plain-clothes officer "started asking

17   questions about the club" and "made a comment to me that they do things a little

18   bit differently in Kennewick."); ECF No. 39-6 at 5 (Plaintiff Moore's testimony

19   that a plain-clothes officer "said or a comment something to the fact that Butch

20   was the president and why did he have three Sergeant-at-Arms? He must be a

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 17

pretty important person."). Defendants, on the other hand, assert that Defendants did not ask questions about Bandidos Motorcycle Club membership. *See, e.g.*, ECF No. 39-8 at 15 (Detective Long's testimony that "there was very little conversation and business other than just issuing these infractions.); ECF No. 39-10 at 6 (Detective Monteblanco's testimony that he did not ask any questions about club membership).

Defendants argue that "Plaintiffs have failed to establish that the questions 'measurably extended the duration of the stop.'" ECF No. 53 at 13. While Plaintiffs have not met the burden of proving their allegations, the Court, at the summary judgment stage, is only concerned with determining whether Plaintiffs have demonstrated a genuine issue of material fact. *See Tolan v. Cotton*, __U.S.__, 134 S. Ct. 1861, 1868 (2014) (finding error where, "[b]y weighing the evidence and reaching factual inferences contrary to [the non-moving party's] competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party"). Considering the parties' dispute concerning Defendants' activities during the traffic stop, the Court finds that Plaintiffs have raised a genuine issue of material fact concerning whether the alleged activities either measurably extended the stop or measurably extended the stop beyond a reasonable time under the circumstances.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 18

The Court concludes that Plaintiffs have raised a number of genuine issues of material fact concerning the constitutionality of the investigatory traffic stop's duration. As such, summary judgment would be inappropriate for either party as the Court cannot determine, as a matter of law, whether the duration was reasonable or unreasonable. The aforementioned issues of fact preclude such a ruling at this time.

### C. Excessive Force

Plaintiffs, in their Complaint, allege that Defendants violated Plaintiffs' "right to be free from police use of excessive-force." ECF No. 4 at 7. However, in their response memorandum, Plaintiffs assert that they "are not actively pursuing an 'excessive force' claim." ECF No. 45 at 13. As such, the Court **dismisses with prejudice** the excessive force allegation under § 1983.

### D. Equal Protection and Discriminatory Law Enforcement

Defendants argue that, even if the traffic stop was pretextually based on Plaintiffs' membership in the Bandidos Motorcycle Club, membership in a particular club or gang is not a protected class for the purpose of the Equal Protection Clause. ECF No. 33 at 18. Plaintiffs counter that the Washington State Motorcycle Profiling Law, RCW 43.101.419, confers protected class status upon motorcycle riders. ECF No. 45 at 16–17.

To state a § 1983 claim for a violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (internal citation omitted). "Members of a motorcycle club do not belong to a protected class." *Kohlman v. Village of Midlothian*, 833 F. Supp. 2d 922, 933 (N.D. Ill. 2011).

Plaintiffs contend that the Washington State Motorcycle Profiling Law grants motorcycle riders protected class status. ECF No. 45 at 17. In support, Plaintiffs cite *United States v. Windsor*, __U.S.__, 133 S. Ct. 2675 (2013), for the proposition that "equal protection claims extend to protected classes created under both state and federal law." ECF No. 45 at 17 n.3.

The Court finds a comparison to age discrimination instructive. Washington State has a statutory schemes in place, granting specific rights to persons harmed by age discrimination. *See* RCW 49.44.090 (declaring it an "unfair practice" for an employer to refuse to hire an individual because the individual is forty years of age or older); RCW 49.60.010 (legislative decree that "discrimination . . . because of . . . age . . . are a major state concern"). However, notwithstanding the Washington State statutory scheme, age classifications are not a protected class under the Equal Protection Clause. *See Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 83 (2000) (noting that "[a]ge classifications, unlike government conduct based

on race or gender, cannot be characterized as 'so seldom relevant to the

achievement of any legitimate state interest that laws grounded in such

considerations are deemed to reflect prejudice and antipathy'") (quoting *Cleburne*

*v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985)). In fact, "States may

discriminate on the basis of age without offending the Fourteenth Amendment if

the age classification in question is rationally related to a legitimate state interest."

*Id.* As such, Plaintiffs' comparison between motorcycle and other forms of

discrimination is misplaced. *See* ECF No. 45 at 15.

Further, *Windsor* declared the Defense of Marriage Act unconstitutional as

"no legitimate purpose overcomes the purpose and effect to disparage and to injure

those whom the State, by its marriage laws, sought to protect in personhood and

dignity." *Windsor*, 133 S. Ct. at 2696. Unlike *Windsor*, the Court finds that, even

assuming the traffic stop was initiated for a discriminatory purpose, it cannot be

said that Defendants lacked a rational basis to investigate Plaintiffs. *See generally*

ECF No. 35-1 (documenting Outlaw Motorcycle Gang and Bandidos Motorcycle

Club criminal activity).

Plaintiffs also argue that Defendants discriminated against them as compared

to similarly situated persons. ECF No. 45 at 16. "A successful equal protection

claim may be brought by a 'class of one,' when the plaintiff alleges that it has been

intentionally treated differently from others similarly situated and that there is no

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 21

1    rational basis for the difference in treatment." *SeaRiver Maritime Fin. Holdings,*

2    *Inc. v. Mineta*, 309 F.3d 662, 679 (citing *Village of Willowbrook v. Olech*, 528 U.S.

3    562, 564 (2000)). Plaintiffs claim that Detective Long "admitted that he may treat

4    the driver of a car or truck differently if he saw them exit the gas station parking lot

5    at five miles per hour." ECF No. 45 at 16.

6        Plaintiffs are incorrect for two reasons. First, Detective Long testified that

7    police officers "must use our discretion in determining when to initiate a traffic

8    stop, as it would be impossible to initiate a traffic stop for every single traffic

9    infraction observed." ECF NO. 57 at 7. As explained by Detective Long, "[t]hat is

10   why I said I 'might' stop a pickup or sedan for violating RCW 46.61.365. I

11   likewise said that I 'might' stop a single motorcycle rider who violated RCW

12   46.61.365." *Id.* As such, Plaintiffs have not demonstrated a genuine issue of

13   material fact concerning their allegation that Detective Long intentionally treated

14   Plaintiffs differently from other, similarly situated vehicles. Second, as discussed

15   above, the Court finds that, even assuming Defendants initiated the traffic stop on a

16   discriminatory basis, Defendants had a rational basis for doing so.

17       The Court finds that Plaintiffs have not demonstrated a genuine issue of

18   material fact concerning their § 1983 equal protection or discriminatory policing

19   causes of action. As such, Plaintiffs' equal protection and discriminatory policing

20   § 1983 causes of action are **dismissed with prejudice**.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 22

**E.  Freedoms of Speech and Association**

Defendants argue that Plaintiffs cannot establish infringement upon their First Amendment rights to speech and association. ECF No. 33 at 19. Plaintiffs contend that, as Plaintiffs were traveling to a national Bandidos Motorcycle Club gathering, Plaintiffs are protected by the First Amendment freedom of association. ECF No. 45 at 18.

Plaintiffs do not address freedom of speech in their response memorandum. Regardless, the "act of wearing . . . vests adorned with a common insignia simply does not amount to the sort of expressive conduct protected by the First Amendment right to freedom of speech." *Villegas v. City of Gilroy*, 484 F.3d 1136, 1141 (9th Cir. 2007), *aff'd on other grounds*, *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950 (9th Cir. 2008). Further, Plaintiffs have not alleged how their right to freedom of speech was infringed by Defendants' conduct. Therefore, to the extent Plaintiffs assert a § 1983 claim based on a violation of freedom of speech, Plaintiffs' claim is **dismissed with prejudice**.

"'[I]mplicit in the right to engage in activities protected by the First Amendment' is 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). "An association must merely engage in

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 23

expressive activity that could be impaired in order to be entitled to protection." *Id.*
at 655.

Plaintiffs rely on *Coles v. Carlini*, __F. Supp. 3d__, 2015 WL 5771134 (D.
N.J. Sept. 30, 2015). In *Coles*, "Plaintiff asserts that the group was on their way to
a charitable event—a benefit on behalf of a sick child—when they were stopped by
Defendants, and there is some evidence that Defendants were aware of the
fundraiser and knew the group was traveling to a charity event." *Id.* at *9. The
court found that "[a] reasonable jury could find that Plaintiff, by wearing Pagan's
'colors' and attending a Pagan's-sponsored charity benefit, was engaged in
expressive conduct protected by the First Amendment." *Id.*

The Court finds *Coles* distinguishable. Unlike in *Coles*, there is no evidence
that Defendants were aware of Plaintiffs' destination or purpose in traveling to a
national Bandidos Motorcycle Club meeting. As Defendants lacked knowledge of
Plaintiffs' destination and purpose, Defendants cannot have acted intentionally to
infringe on Plaintiffs' right to association. Defendants noted that "[p]ursuant to
Plaintiffs' argument . . . every motorist stopped who happened to be en route to
some First Amendment expressive gathering would have a First Amendment claim
against the officer effectuating the traffic stop." ECF No. 53 at 17–18. The Court
agrees, and finds that Plaintiffs have failed to demonstrate a genuine issue of

1    material fact concerning their § 1983 freedom of association claim. Plaintiffs'

2    § 1983 freedom of association claim is therefore **dismissed with prejudice**.

3        **F.  Individual Participation by Defendants**

4        Defendants argue that "Plaintiffs did not identify any specific action taken

5    by any particular Defendant, other than Detective Long." ECF No. 53 at 14.

6    Plaintiffs contend that "liability can be extended to fellow officers despite the lack

7    of specific identification." ECF No. 45 at 10.

8        "In order for a person acting under color of state law to be liable under

9    section 1983 there must be a showing of personal participation in the alleged rights

10   deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). While

11   defendants can be liable as a group, the plaintiff must "first establish the 'integral

12   participation' of the officers in the alleged constitutional violation." *Id.* at 935

13   (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). "'[I]ntegral

14   participation' does not require that each officer's actions themselves rise to the

15   level of a constitutional violation." *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th

16   Cir. 2004). For example, officers who provided armed backup during an

17   unconstitutional search were integral to that search. *Id. But see Hopkins v.

18   Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (officer not an "integral participant"

19   where officer not privy to discussion, planning, or execution of unlawful search);

20   *Sjurset v. Button*, 810 F.3d 609, 619 (9th Cir. 2015) (officers not "integral

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 25

1    participants" where an entirely separate agency made determination over which

2    officers had no input).

3        As the Court has found that Plaintiffs have demonstrated a genuine issue of

4    material fact solely concerning their claim arising from the duration of the

5    investigatory stop, the Court will analyze only that claim. The Court finds that

6    Plaintiffs have demonstrated a genuine issue of material fact as to the "integral

7    participant" status of Defendants Detective Long, Detective Monteblanco, and

8    Officer Sagen. Detective Long gathered backup prior to initiating the traffic stop,

9    and a large number of officers responded to the scene. *See* ECF No. 39-8 at 5

10   (Detective Long's testimony that he did not immediately initiate a traffic stop as

11   "we have some degree of backup units to cover ourselves for safety reasons" and

12   "it takes time for cover units to arrive."). Additionally, Detective Long was

13   allegedly the officer asking questions on the scene. ECF No. 39-8 at 4 (noting that

14   "it's my role to father intelligence on them and to investigate any crimes involving

15   them"). As such, assuming the evidence in the light of Plaintiffs' allegations,

16   Detective Long was at a minimum an "integral participant" in the allegedly

17   unreasonably long traffic stop.

18       Further, Plaintiffs have submitted evidence that Detective Monteblanco and

19   Officer Sagen issued the infractions. ECF No. 39-8 at 15 (noting that Officer Sagen

20   "prepared the infractions using the Sector system in his patrol car; and then once

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 26

the infractions were prepared, he went up to and issued them to each"); ECF

No. 39-9 at 9 (noting that Detective Monteblanco wrote the tickets for the rear

group of Plaintiffs). As Plaintiffs allege that Defendants extended the traffic stop

for an unreasonable duration, Detective Monteblanco and Officer Sagen were

"integral participants" as, viewing the evidence favorably to Plaintiffs, they were

undertaking the purported primary purpose of the traffic stop: issuing traffic

citations.

Plaintiffs, however, have failed to demonstrate that the remaining Defendant

officers were "integral participants" in the traffic stop. For example, Defendants

Carlos Trevino, Jeremy Carrigan, John Doe Fitzpatrick, and Dan Korten are

alleged solely to have been present during the traffic stop. *See* ECF No. 39-8 at 6.

Mere presence, without any evidence of participation in planning or discussion, is

insufficient to qualify an officer as an "integral participant." As such, Plaintiffs

§ 1983 causes of action against Defendants Trevino, Carrigan, Fitzpatrick, and

Korten are **dismissed with prejudice**.

Further, Defendant Wayne Meyer is only noted as being present during the

traffic stop and possibly driving a vehicle equipped with SECTOR technology. *See*

ECF No. 39-9 at 4. Mere presence, without any evidence of participation in

planning or discussion, is insufficient to qualify an officer as an "integral

participant." Further, the fact that an officer may have been driving a vehicle

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 27

equipped with SECTOR is insufficient to transform that officer into an "integral

participant." As such, Plaintiffs § 1983 cause of action against Defendant Meyer is

**dismissed with prejudice**.

Defendant Joshua Kuhn is noted as being present during the traffic stop and

driving a vehicle equipped with SECTOR. *Id.* Further, Detective Long speculated

that Officer Kuhn may have video recorded the rear group of Plaintiffs. ECF

No. 39-8 at 15. Although Detective Long testified that "it's probably Officer

Kuhn," *id.*, the Court finds that this speculative assertion is insufficient to

transform Officer Kuhn into an "integral participant." As such, Plaintiffs' § 1983

cause of action against Defendant Kuhn is **dismissed with prejudice**.

Defendant Ken Lattin is noted as being present during the traffic stop and

possibly driving a vehicle equipped with SECTOR technology. *See* ECF No. 39-9

at 4. Further, Sergeant Latin conferred with Officer Sagen concerning the

appropriate infraction. ECF No. 39-8 at 10. As Officer Sagen, not Sergeant Lattin,

authored and issued the infractions, this minimal, peripheral involvement does not

transform Sergeant Lattin into an "integral participant." As such, Plaintiffs' § 1983

cause of action against Defendant Lattin is **dismissed with prejudice**.

Defendant Abel Suarez is noted as being present at the traffic stop, ECF

No. 39-8 at 6, and can be observed in a video "chatting with the violators for short

periods of time." ECF No. 39-9 at 10. As Detective Long testified that "I can't tell

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 28

1  you if that was anything pertaining to gang membership or not," *id.*, the Court

2  finds that this conversation concerning an unknown subject is insufficient to

3  transform Officer Suarez into an "integral participant." As such, Plaintiffs' § 1983

4  cause of action against Defendant Suarez is **dismissed with prejudice**.

5      Defendant Jack Simington is noted as being present at the traffic stop, ECF

6  No. 39-8 at 6, and can be observed in a video "chatting with the violators for short

7  periods of time." ECF No. 39-9 at 10. Further, Sergeant Simington initially

8  communicated Plaintiffs' whereabouts to Detective Long, and asked Detective

9  Long "to go out to the location and get a look at this group of Bandidos." ECF

10  No. 39-8 at 3. Sergeant Simington also recalled the 1526 hours CAD entry

11  concerning the license plate after Plaintiffs had left the scene. ECF No. 39-10 at 7.

12  Similar to Officer Suarez, Detective Long testified that, in relation to any

13  conversation, "I can't tell you if that was anything pertaining to gang membership

14  or not." ECF No. 39-9 at 10. Further, Sergeant Simington's directive to Detective

15  Long was merely to observe Plaintiffs at the gas station. As there is no evidence

16  that Sergeant Simington played a larger role in the traffic stop, Sergeant Simington

17  is not an "integral participant." As such, Plaintiffs' § 1983 cause of action against

18  Defendant Simington is **dismissed with prejudice**.

19      Plaintiffs also alleged that John Does 1-20 violated Plaintiffs' constitutional

20  rights. *See* ECF No. 4 at 1. However, Detective Long testified that the named

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 29

Defendants were the only officers present during the traffic stop. ECF No. 39-8 at 6. As Plaintiffs have not demonstrated that any additional, unknown persons were "integral participants," Plaintiffs' § 1983 cause of action against John Does 1-20 is **dismissed with prejudice**.

### G. Qualified Immunity

Defendants assert that, even if the Court finds a genuine issue of material fact concerning an alleged constitutional violation, Defendants are entitled to qualified immunity. ECF No. 33 at 22. Plaintiffs assert that "[t]he qualified immunity defense should either be dismissed or left to the jury to resolve." ECF No. 45 at 21.

"Qualified immunity 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sjurset*, 810 F.3d at 614 (quoting *Mueller v. Auker (Mueller II)*, 700 F.3d 1180, 1185 (9th Cir. 2012)). To overcome a qualified immunity defense, a plaintiff must demonstrate that (1) "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right," and (2) "the law clearly established that the officer's conduct was unlawful in the circumstances of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As discussed above, the Court has found that, viewed in the light most favorable to Plaintiffs, Plaintiffs have demonstrated a genuine issue of material fact concerning the alleged Fourth Amendment violation arising from the investigatory traffic stop's duration. Therefore, the Court must ascertain whether the right in question was "clearly established" at the time of the alleged offense.

"To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards* __U.S.__, 132 S. Ct. 2088, 2093 (2012) (internal citation omitted). As noted by the Supreme Court, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *see also United States v. Place*, 462 U.S. 696, 709 (1983) ("Moreover, in assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation.").

The law in question, that an officer cannot measurably extend an investigatory traffic stop to investigate unrelated matters, was therefore clearly established at the time of Plaintiffs' traffic stop in 2012. As such, the Court finds that the Defendant officers are not entitled to qualified immunity concerning Plaintiffs' claim arising out of the duration of the investigatory traffic stop.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 31

**H. Claims Against City of Kennewick and Benton County**

"A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long v. Cty. of L.A.*, 442 F.3d 1178. 1185 (9th Cir. 2006) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). To sustain a § 1983 cause of action against a municipality, the "execution of a government's policy or custom [must] inflict[] the injury." *Id.* To impose liability against a municipality, a plaintiff must demonstrate that 1) "a county employee violated the plaintiff's constitutional rights"; 2) "the county has customs or policies that amount to deliberate indifference"; and 3) these customs or policies were the moving force being the employee's violation of constitutional rights." *Id.* at 1186.

Defendants argue that Plaintiffs have not demonstrated a "policy or custom" to hold the City of Kennewick liable under § 1983. ECF No. 33 at 4. Further, as Plaintiffs present no evidence or argument concerning Benton County, Plaintiffs' § 1983 cause of action against Benton County is **dismissed with prejudice**. *See* ECF No. 53 at 2. Plaintiffs argue that the City of Kennewick is liable as (1) Kennewick has a practice or custom of disregarding the Washington State Motorcycle Profiling Law; (2) Kennewick failed to train officers concerning motorcycle profiling; and (3) Kennewick ratified the officers' conduct in this matter. ECF No. 38 at 4–7.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 32

As noted above, the Court has determined that Plaintiffs have demonstrated a genuine issue of material fact concerning only their claim arising from the duration of the investigatory traffic stop. Therefore, the Court will not address Plaintiffs' first and second arguments as a violation of the Washington State Motorcycle Profiling Law cannot form the basis of a § 1983 cause of action.

"A municipality . . . can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "Ratification, however, generally requires more than acquiescence." *Sheehan v. City and Cty. Of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 1765 (2015). "The mere failure to discipline . . . does not amount to ratification of their allegedly unconstitutional actions." *Id.*; *see also Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010) (noting that merely stating that the County ratified official conduct by failing to discipline is insufficient to create a triable issue of fact).

Concerning ratification, Plaintiffs have alleged that "[t]here is no evidence in this case that Kennewick has condemned or disciplined the officers involved." ECF No. 45 at 6. As noted above, failure to discipline does not equate to ratification. The Court finds that plaintiffs have failed to demonstrate a genuine

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 33

1    issue of material fact concerning whether the City of Kennewick ratified Defendant

2    officers' actions.

3        The Court finds that Plaintiffs have failed to demonstrate a genuine issue of

4    material fact concerning whether the City of Kennewick had a policy or custom of

5    unconstitutionally extending the duration of investigatory traffic stops for unrelated

6    purposes. As such, Plaintiffs' § 1983 cause of action against the City of Kennewick

7    is **dismissed with prejudice**.

8    **III.    Violation of the Washington State Motorcycle Profiling Law**

9        Plaintiffs request that the Court grant summary judgment and find that

10   Defendant officers violated the Washington State Motorcycle Profiling Law. ECF

11   No. 38 at 4. The Court declines to do so for two independent reasons.

12       First, Plaintiffs have not alleged a cause of action against the Defendant

13   officers for violating the Washington State Motorcycle Profiling Law. In their

14   Complaint, Plaintiffs only assert causes of action under the Washington State

15   Motorcycle Profiling Law against the City of Kennewick and Benton County. ECF

16   No. 4 at 8–9. Therefore, it would be inappropriate for the Court to grant summary

17   judgment on a cause of action Plaintiffs have neglected to assert.

18       Second, the Washington State Motorcycle Profiling Law does not apply to

19   or impose any obligation on the individual Defendant officers. The Washington

20   State Motorcycle Profiling Law reads as follows:

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 34

(1) The criminal justice training commission shall ensure that issues related to motorcycle profiling are addressed in basic law enforcement training and offered to in-service law enforcement officers in conjunction with existing training regarding profiling.

(2) Local law enforcement agencies shall add a statement condemning motorcycle profiling to existing policies regarding profiling.

(3) For the purpose of this section, "motorcycle profiling" means the illegal use of the fact that a person rides a motorcycle or wears motorcycle-related paraphernalia as a factor in deciding to stop and question, take enforcement action, arrest, or search a person or vehicle with or without a legal basis under the United States Constitution or Washington state Constitution.

RCW 43.101.419. Not only does the Washington State Motorcycle Profiling Law not authorize a private cause of action, it imposes no obligations on individual officers. Subsection one applies to the criminal justice training commission, subsection two applies to local law enforcement agencies, and subsection three provides a definition of "motorcycle profiling" for the purpose of subsections one and two. As such, individual police officers cannot violate the Washington State Motorcycle Profiling Law.

Similarly, the Court will not imply a cause of action under the Washington State Motorcycle Profiling Law against the Defendant officers. The Supreme Court of Washington utilizes the following three-part test to determine whether to recognize an implied cause of action: "first, whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 35

legislation." *Bennett v. Hardy*, 113 Wn.2d 912, 920–21 (1990). As noted above, the Washington State Motorcycle Profiling Law is targeted at the criminal justice training commission and local law enforcement agencies, requiring those bodies to adopt policies barring motorcycle profiling. *See* RCW 43.101.419. The statute imposes no duties upon individual officers. Consequently, legislative intent does not support creating an implied cause of action against the individual Defendant officers and an implied remedy would be inconsistent with the purpose of the statute.

No cause of action, either express or implied, exists against the individual Defendant officers under the Washington State Motorcycle Profiling Law. The Court therefore **denies** Plaintiffs' motion for summary judgment.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, **ECF No. 33**, is **GRANTED IN PART AND DENIED IN PART**. All claims against the City of Kennewick, Benton County, Ken Lattin, Jack Simington, Joshua Kuhn, Wayne Meyer, Carlos Trevino, Abel Suarez, John Doe Fitzpatrick, Dan Korten, and John Does 1-20 are **dismissed with prejudice**. All claims against Marco Monteblanco, Daniel Long, and Jeffrey Sagen are **dismissed with prejudice**, with the exception of Plaintiffs' 42 U.S.C. § 1983 cause of

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 36

1   action arising out of the allegedly unconstitutional duration of the

2   investigatory traffic stop.

3     2. Plaintiffs' Motion for Summary Judgment, **ECF No. 38**, is **DENIED**.

4       The District Court Clerk is directed to enter this Order, provide copies to

5   counsel, and **terminate City of Kennewick, Benton County, Ken Lattin, Jack**

6   **Simington, Joshua Kuhn, Wayne Meyer, Carlos Trevino, Abel Suarez, John**

7   **Doe Fitzpatrick, Dan Korten, and John Does 1-20 as defendants in this**

8   **matter**.

9       **DATED** this 18th day of March 2016.

10

11                *s/ Rosanna Malouf Peterson*
                   ROSANNA MALOUF PETERSON

12                 United States District Judge

13

14

15

16

17

18

19

20